## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JOHN MAYNARD,**

     **Petitioner,**

     **v.**

**MICK OPPY, WARDEN,**

     **Respondent.**

          **CASE NO. 2:13-CV-01166**
          **JUDGE GEORGE C. SMITH**
          **MAGISTRATE JUDGE ABEL**

### REPORT AND RECOMMENDATION

Petitioner John Maynard, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's *Return of Writ,* Petitioner's *Traverse,* and the exhibits of the parties.

The case involves John Maynard's convictions after a jury trial in the Franklin County Court of Common Pleas for murder, aggravated robbery, aggravated burglary, and felonious assault with specifications. He was sentenced to eighteen years to life in prison. Petitioner's convictions and sentence were affirmed by the Ohio Court of Appeals, and the Ohio Supreme Court denied Maynard's motion for leave to appeal. Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, the appellate court dismissed the application as untimely. Petitioner now pursues federal habeas relief on the grounds of insufficiency of the evidence, prosecutorial misconduct, and unduly suggestive identification procedures. For the reasons that follow, the Magistrate Judge concludes that Petitioner's claims are procedurally defaulted or without merit and therefore **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

this case follows:

> On May 27, 2010, appellant was indicted in connection with the
> 2003 murder of David Daniels ("Daniels"), who was shot and
> killed during a home invasion in which the offenders planned to
> rob a drug dealer, James Davis ("Davis"), living at a duplex on
> North Princeton Avenue in Columbus, Ohio. Davis, also known as
> "Fat Jim," was shot at the scene, but survived his injuries.
>
> On April 14, 2011, a hearing was held on appellant's motion to
> suppress identification. Although a formal ruling was not issued,
> the trial court, in essence, denied the motion, stating that the issues
> with the photo array and the identification went to the weight of
> the evidence, not its admissibility at trial. A jury trial commenced
> on April 18, 2011. The following testimony and evidence was
> established.
>
> In April 2003, David Greenberg ("Greenberg") and several other
> individuals hatched the plan to rob Davis at his duplex, located at
> 65 North Princeton Avenue. In the beginning, Stacy Nichols
> ("Nichols") and her stepfather, Jimmy Clark ("Clark"), approached
> Greenberg about the robbery. Greenberg and Nichols knew each
> other from the neighborhood and had previously slept together on a
> few occasions. Clark eventually backed out of the robbery.
> Greenberg then recruited Charles Danko ("Danko") to assist in the
> robbery. Greenberg and Danko had previously worked together for
> a tree-trimming company. Danko was also dating Greenberg's
> former girlfriend, Angie Davis. Danko recruited appellant to help
> with the robbery. Danko and Greenberg both knew appellant
> because appellant and Angie Davis are cousins. In addition,
> appellant recruited a fifth person, his half-brother, whose full name
> was unknown but who was referred to throughout the trial as either
> "James" or "Jason."
>
> The plan was for Danko to be the "get up" driver who would drive
> Greenberg, appellant, and appellant's half-brother James to the
> duplex. Danko was to drop the three men off in front of the duplex
> and drive away. Greenberg, appellant, and James would be the
> "inside" guys who would go inside the duplex and steal the money
> and drugs. Greenberg was armed with a 9 mm handgun, appellant

2

had a club or a stick, and James may have also had a handgun. Upon stealing the money and drugs, Greenberg, appellant, and James were to exit out the back door of the duplex. Nichols was to be the "get-away" driver, who would be waiting in the alley behind the duplex to drive everyone away from the scene.

On April 15, 2003, Danko drove the three "inside" guys past the duplex prior to the robbery. They observed Daniels exit the residence on the right side (65 North Princeton Avenue) and enter the residence on the left side (63 North Princeton Avenue). Several other individuals also entered the residence. At that point, the plan changed and the target became 63 North Princeton Avenue, rather than 65 North Princeton Avenue.

The three "inside" guys approached the duplex. "Fat Jim" saw them approaching and attempted to prevent entry. Greenberg was the only one of the three who was able to force his way inside. Once inside, Greenberg saw Daniels standing behind "Fat Jim" with a gun. Greenberg and Daniels struggled over the gun. During the struggle, Greenberg heard a gunshot. Believing it was fired from Daniels' gun, Greenberg shot Daniels twice. Greenberg then continued firing until he "emptied the clip," killing Daniels. (Tr. 220.) "Fat Jim" also sustained multiple bullet wounds, but he survived those injuries.FN1 However, Greenberg was uncertain as to exactly how "Fat Jim" was injured. When Greenberg removed the gun from Daniels' hand, he discovered Daniels' weapon had not been loaded. Therefore, Greenberg realized the initial gunshot must have come from somewhere outside. Greenberg also realized he had suffered a gunshot wound to the knee and concluded he had somehow shot himself through the knee while shooting at Daniels.

FN1. Davis, aka "Fat Jim" did not testify at trial. According to the opening statement provided by the prosecution at trial, Davis died of unrelated causes prior to the trial.

Greenberg grabbed a couple of bags from the table and headed for the back door but was unable to unbolt the deadlocks. Panicking, he exited the front door instead and fell down the steps as a result of his gunshot wound. Greenberg scooped up the contents of the bags, which had broken loose during the fall, and began limping toward the side and the back of the duplex. He ran into appellant and James, who helped carry him to the get-away car where Nichols was waiting. Nichols drove the car to her house. Greenberg, appellant, and James then went to another house a short distance away. Danko eventually arrived as well. After a while, appellant drove Greenberg back to Greenberg's residence.

When the first responding officers arrived at the North Princeton Avenue duplex, they found Davis on the couch. Despite suffering multiple gunshot wounds, he was still responsive. He advised the officers that the shooter was a man named Greg Daniels, who lived next door. However, officers were unable to locate anyone next door.

On April 18, 2003, Greenberg was arrested by SWAT officers at his residence. Greenberg was subsequently indicted for aggravated murder with the death penalty specification, as well as on other charges. Eventually, Greenberg reached an agreement with plaintiff-appellee, State of Ohio ("the State"), whereby he pled guilty to murder and felonious assault and received a sentence of 15 years to life. As part of his plea deal, Greenberg made a proffer statement in which he revealed the names of the others who had participated and their respective roles in the home invasion. Therefore, as part of his plea deal, Greenberg implicated Nichols, Danko, appellant and James.

In 2006, Greenberg identified photos of Nichols and Danko. However, when shown a black-and-white photo array that included appellant's photo, he was unable to identify him. He had also been shown another photo array containing a photograph of another John Maynard, but he did not identify anyone. Later, in 2010, Greenberg was shown a color photo array containing the same photographs as those displayed in the 2006 array and he identified appellant. Additionally, in 2011, at the trial, Greenberg made an in-person identification of appellant as one of the "inside" guys.

Following Greenberg's proffer, Nichols and Danko were both subsequently indicted for murder, aggravated robbery, aggravated burglary, and felonious assault.

Nichols pled guilty to aggravated robbery in March 2009 and received a ten-year sentence with the ability to file for judicial release after serving five and one-half years without opposition from the State. As part of her plea agreement, Nichols made a proffer statement and agreed to testify truthfully against Danko and any co-defendants (such as appellant) in future proceedings. Although Nichols did not identify appellant when shown a photo array, she did make an in-court identification at appellant's trial

Danko pled guilty in April 2010 to the stipulated lesser included offense of involuntary manslaughter and received a ten-year sentence, which was imposed concurrently with the sentence

4

Danko was serving on an unrelated matter in Kentucky. As part of his plea agreement, he also made a proffer statement and agreed to testify truthfully against any co-defendants. Danko identified appellant from a photo array and made an in-court identification at the trial.

On April 22, 2011, the jury returned its verdicts, finding appellant guilty of all four counts with specifications. On August 5, 2011, a sentencing hearing was held. The trial court imposed a total aggregate sentence of 18 years to life. The trial court filed a judgment entry of conviction journalizing the conviction and sentence on August 9, 2011. This timely appeal now follows in which appellant asserts three assignments of error for our review.

II. ASSIGNMENTS OF ERROR

ASSIGNMENT OF ERROR NO. 1

THE OHIO REVISED CODE IS UNCONSTITUTIONAL AS APPLIED TO THIS DEFENDANT, WHO WAS CHARGED AS AN ACCOMPLICE TO FELONY MURDER; THE APPLICATION OF THE COMPLICITY STATUTE AND THE MURDER STATUTE TOGETHER PROVIDE THAT THE STATE CAN MEET ITS BURDEN BY PROVING ONLY AN INFERENCE UPON AN INFERENCE, WHICH IS A LEGALLY IMPERMISS[I]BLE STANDARD OF PROOF[.]

ASSIGNMENT OF ERROR NO. 2

THE DEFENDANT/APPELLANT WAS DENIED HIS CONS[T]ITUTIONAL RIGHT UNDER THE CONFRONTATIONS CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS, OHIO REVISED CODE § 2945.12 AND CRIMINAL RULE 43(A), ALL OF WHICH AFFORD HIM THE RIGHT TO BE PRESENT FOR ALL JURY PROCEEDINGS[.]

ASSIGNMENT OF ERROR NO. 3

THE STATE'S ATTORNEY COMMITTED PROSECUTORIAL MISCONDUCT BY (1) IMPROPERLY VOUCHING FOR THE CREDIBILITY OF THE STATE'S WITNESSES AND (2) BY ARGUING MATTERS OF PERSONAL BELIEF AND MATTERS NOT IN EVIDENCE IN HIS CLOSING ARGUMENTS[.]

*State v. Maynard*, No. 11AP-697, 2012 WL 2463966, at *1-3 (Ohio App. 10th Dist. June 28, 2012).  On June 28, 2012, the Ohio Tenth District Court of Appeals affirmed the judgment of the trial court.  *Id*.  On November 7, 2012, the Ohio Supreme Court denied Petitioner's appeal.  *State v. Maynard,* 133 Ohio St.3d 1467 (Ohio 2012).

Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, the state appellate court denied the application as untimely:

> App.R. 26(B) allows applications to reopen an appeal from a judgment of conviction and sentence based upon a claim of ineffective assistance of appellate counsel. App.R. 26(B)(1) provides that an application for reopening shall be filed within 90 days from the journalization of the appellate judgment. Additionally, App.R. 26(B)(2)(b) requires a showing of good cause for an untimely filing where the application is filed more than 90 days after the journalization of the appellate judgment.
>
> Appellant's application to reopen was filed on January 7, 2013. However, the 90–day deadline established under App.R. 26(B)(1) expired on or about September 26, 2012. Thus, appellant's application is untimely, in that the instant application was filed more than six months after the journalization of the appellate judgment in this action. In order to pursue his application, appellant must demonstrate good cause as to why he was unable to make a timely filing. For the reasons that follow, we find appellant has failed to demonstrate good cause.
>
> In an effort to demonstrate good cause, appellant asks us to excuse his untimely filing on the grounds that it is due to his appellate counsel's failure to file an application to reopen. Appellant submits that counsel who was filing his appeal in the Supreme Court of Ohio FN1 had his file and his transcripts, but failed to utilize the time to reopen his direct appeal within the 90–day deadline. Appellant further argues his counsel never informed him of any appellate procedures for reopening his direct appeal until after the Supreme Court had denied leave to appeal. He asserts it was at that time that counsel advised him he had merit in filing an application to reopen, but counsel needed additional funds to file the application and he was unable to advance the funds. Appellant claims he discussed his current proposed assignment of error with appellate counsel during the same jail visit at which she informed him the Supreme Court had denied leave to appeal.

6

FN1. Counsel who filed appellant's appeal in the Supreme Court of Ohio was not the same counsel who filed his appeal in our court.

Appellant cannot establish good cause by placing the blame on his counsel. Proceedings to reopen an appeal pursuant to App.R. 26(B) are collateral postconviction proceedings. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004–Ohio–6110, syllabus. These proceedings are not part of the direct appeal process. Id. Consequently, indigent defendants are not entitled to counsel in an App.R. 26(B) proceeding. Id.

Notably, the 90–day timeframe for filing an application for reopening begins to run from the date our appellate judgment is filed. In this case, that date was June 28, 2012. And, as noted above, this deadline expired on September 26, 2012. In other words, whether or not the Supreme Court declined to accept his appeal for review did not affect the calculation of the 90–day deadline for filing an application for reopening. Additionally, the fact that appellant was aware an appeal had been filed in the Supreme Court is evidence that he knew he had lost his appeal in this case, and therefore he cannot demonstrate good cause for failing to comply with the 90–day deadline.

Even if appellant were to claim purported ignorance of the 90–day deadline, such a claim does not prove good cause. "Lack of effort or imagination, and ignorance of the law * * * do not automatically establish good cause for failure to seek timely relief." State v. Reddick, 72 Ohio St.3d 88, 91 (1995) (affirming denial of application to reopen appeal). Appellant cannot rely upon his alleged lack of legal training to excuse his failure to comply with the 90–day deadline. *State v. Farrow*, 115 Ohio St.3d 205, 206, 2007–Ohio–4792, ¶ 6. The 90–day requirement is "applicable to all appellants [.]" *Id.*, quoting *State v. Winstead*, 74 Ohio St.3d 277, 278 (1996). "Consistent enforcement of the rule's deadline by the appellate courts in Ohio protects on the one hand the state's legitimate interest in the finality of its judgments and ensures on the other hand that any claims of ineffective assistance of appellate counsel are promptly examined and resolved." *State v. Gumm*, 103 Ohio St.3d 162, 2004–Ohio–4755, ¶ 7.

Appellant has failed to offer a sound reason as to why he (unlike other criminal defendants) could not comply with this fundamental element of the rule. Thus, denial of appellant's untimely application due to failure to demonstrate good cause is proper.

7

*State v. Maynard*, No. 11AP-697, 2013 WL 865483, at *1-3 (Ohio App. 10th Dist. March 7,

2013).  The appellate court alternatively dismissed the Rule 26(B) application on the merits.  *Id.*

On June 5, 2013, the Ohio Supreme Court denied the appeal.  *State v. Maynard*, 135 Ohio St.3d

1462 (Ohio 2013).

On November 19, 2013, Petitioner filed this action for a writ of habeas corpus.  He

asserts that the evidence is constitutionally insufficient to sustain his convictions (claim one);

that he was denied a fair trial by prosecutorial misconduct (claim two); and that he was denied a

fair trial because of an unduly suggestive identification procedure (claim three).  It is the position

of the Respondent that Petitioner's claims are procedurally defaulted and without merit.

**Procedural Default**

Two of the more basic principles in habeas corpus law are the requirements that a state

prisoner fairly present all of his federal constitutional claims to the state courts, and that the

failure to do so prevents a federal court from ruling on the merits of those claims. That is, in

order for a federal court to decide any such claims on their merits, "the state prisoner must give

the state courts an opportunity to act on his claims before he presents those claims to a federal

court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). That is so because

§ 2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's

position "shall not be granted" unless "the applicant has exhausted the remedies available in the

courts of the State...." Section 2254(c) expands on that requirement, stating that "[a]n applicant

shall not be deemed to have exhausted the remedies available in the courts of the State, within

the meaning of this section, if he has the right under the law of the State to raise, by any available

procedure, the question presented."

The first step in this analysis is to determine how, if at all, Ohio law allows claims such as the ones Petitioner is making to be presented to the Ohio courts. Four basic rules come into play here. First, claims which appear on the face of the record must be presented by way of direct appeal; if not, *res judicata* bars them from being raised in any other type of proceeding. *State v. Ishmail*, 67 Ohio St.2d 16 (1981). An exception to this rule exists when an appellant is represented on appeal by the same attorney who tried the case; that attorney need not raise claims of his or her own ineffectiveness even if those claims appear on the face of the record, and such claims are properly raised in a post-conviction proceeding under Ohio Rev.Code § 2953.21. *See State v. Lentz,* 70 Ohio St.3d 527, 530 (1994) ("*res judicata* does not apply when trial and appellate counsel are the same, due to the lawyer's inherent conflict of interest").

Second, although a direct appeal from an Ohio appellate court decision must be taken to the Ohio Supreme Court within 45 days, Ohio allows a party who fails to meet that time limit to move for leave to file a delayed direct appeal. *See* Ohio S.Ct. Prac. Rule 7.01(A)(4)(a) ("In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the appellant may file a delayed appeal by filing a notice of appeal and a motion for delayed appeal ..."). Such a motion must be accompanied by an explanation of "the reasons for the delay." Ohio S.Ct. Prac. Rule 7.01(A)(4)(a)(I). If the Ohio Supreme Court were to grant a motion for delayed direct appeal, however, it would consider only those issues raised in the court of appeals. *See Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir. 1982), citing, *inter alia, State v. Phillips*, 27 Ohio St.2d 294 (1971); *see also Tanner v. Wolfe*, 2006 WL 3452414 (S.D Ohio Nov.29, 2006) ("the Ohio Supreme Court does not ordinarily consider claims not raised in the Court of Appeals below").

Third, Ohio allows claims that do not appear from the face of the record to be raised in a post-conviction proceeding filed under Ohio Rev.Code § 2953.21. That is because claims relying on evidence outside the record cannot be raised on direct appeal, which is limited to claims appearing in the trial court record. *See, e.g., State v. Perry*, 10 Ohio St.2d 175 (1967); *see also State v. Smith,* 125 Ohio App.3d 342 (Butler Co.App.1997) (in the context of a post-conviction petition, "[t]he presentation of competent, relevant, and material evidence outside the record may defeat the application of res judicata"). And, as noted above, a postconviction petition may also properly raise claims of ineffective assistance of counsel that appear on the face of the record if the defendant was represented by the same attorney at the trial and appellate levels.

Finally, Ohio permits defendants to claim that their appellate attorneys were ineffective. The procedure for raising this kind of claim is a motion under Ohio App. R. 26(B) to reopen the direct appeal, filed with the state court of appeals. *State v. Murnahan* 63 Ohio St.3d 60 (1992). A Rule 26(B) motion must be filed within 90 days from journalization of the court of appeals' decision "unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)((1).

**Claims One and Three**

In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions.  Petitioner failed to raise this claim on appeal, except as it applies to his murder conviction.[1]  In claim three, Petitioner asserts that he was denied a fair trial based on an unduly suggestive identification procedure.  Petitioner failed to raise this claim on appeal.  Petitioner may now no longer raise these claims in the state courts by operation of Ohio's doctrine of *res*

---

[1] Respondent contends that Petitioner likewise has procedurally defaulted his claim regarding insufficiency of the evidence as it applies to his murder conviction by failing to raise the same arguments in the Ohio Supreme Court as he did in the appellate court below.  The Court need not address the issue, concluding, in any event, that the claims lacks merit.

10

*judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of res judicata.). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. Id. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Id. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent

subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner additionally procedural defaulted his claim regarding the alleged unduly identification (habeas corpus claim three) by failing to object at trial. In Rule 26(B) proceedings, the appellate court noted that, had the claim been raised on direct appeal, it would have been reviewed for plain error only, due to Petitioner's preserve the issue for appeal. *See State v. Maynard*, 2013 WL 865483, at *3-5. The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). *See Adams v. Bradshaw*, 484

F.Supp.2d 753, 771 (N.D.Ohio 2007)(enforcing procedural default based on the petitioner's failure to contemporaneously object at trial); *Wright v. Warden*, No. 2:12-cv-512, 2013 WL 5878128, at *9 (S.D. Ohio Oct. 30, 2013)(same).

Thus, Petitioner has waived claim one, except as it applies to his claim that the evidence is constitutionally insufficient to sustain his conviction on murder, and claim three. Petitioner may still secure this Court's review of these claims on the merits if he establishes cause for his procedural default as well as actual prejudice from the alleged constitutional violations.

> " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to meet this standard. Nothing in the record indicates that any external factor impeded Petitioner's ability to pursue proper appeals raising the claims presented in the *Petition*.

Additionally, any claimed ineffective assistance of appellate counsel cannot serve as cause for Petitioner's procedural default, because the state appellate court denied Petitioner's Rule 26(B) application as untimely. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) (ineffective assistance of counsel can constitute cause for a procedural default only if that claim has been properly preserved). The state court's alternative ruling on the merits does not forgive Petitioner's waiver or otherwise revive the claim for purposes of habeas corpus review. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (Where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will nevertheless consider the claim to have been procedurally defaulted).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley* v. United *States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones,* 395 F.3d 577, 589 (6th Cir. 2005) (footnote omitted). The record in this action fails to satisfy this standard.

**Merits**

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court

determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013) (quoting *Harrington v. Richter,* 562 U.S.786, ⸺, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett,* 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley,* 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley,* 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence

presented in the State court proceeding"). The United States Court of Appeals for the Sixth

Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent
> if (1) "the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law[,]" or (2) "the
> state court confronts facts that are materially indistinguishable
> from a relevant Supreme Court precedent and arrives" at a
> different result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an
> "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it
> "identifies the correct governing legal rule from [the Supreme]
> Court's cases but unreasonably applies it to the facts of the
> particular ... case" or either unreasonably extends or unreasonably
> refuses to extend a legal principle from Supreme Court precedent
> to a new context. Id. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146
> L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with

the petitioner. *Cullen v. Pinholster*, –––U.S. –––, –––, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court

precedent] unreasonable, ... [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21,

(2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and

*Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786

("A state court's determination that a claim lacks merit precludes federal habeas relief so long as

" 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable

application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the

reasonableness of the state court's analysis. *Holder v. Palme*r, 588 F.3d 328, 341 (6th Cir. 2009)

(" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the

ultimate legal conclusion that the state court reached and not whether the state court considered

and discussed every angle of the evidence.' " (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th

Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013)

(considering evidence in the state court record that was "not expressly considered by the state

court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in

evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a

court must review the state court's decision based solely on the record that was before it at the

time it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under §

2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.


**Claim One**

       In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain

his murder conviction.  Petitioner challenged the constitutionality of the statute on appeal, but the

state appellate court additionally addressed the claim as one of insufficiency of the evidence,

denying the claim, in relevant, part as follows:

>                Pursuant to R.C. 2903.02(B), felony murder is committed
> where one "cause[s] the death of another as a proximate result
> of the offender's committing or attempting to commit an
> offense of violence that is a felony of the first or second
> degree and that is not a violation of section 2903.03 [voluntary
> manslaughter] or 2903.04 [involuntary manslaughter]of the
> Revised Code." Under the felony-murder provision, purpose to
> kill is not an element of the crime and need not be proven.
> Instead, the mens rea for felony murder is the intent that is
> required to commit the underlying predicate offense. *See State
> v. Walters,* 10th Dist. No. 06AP–693, 2007–Ohio–5554, ¶ 61
> (the prosecution is not required to prove a culpable mental
> state with respect to murder under the felony-murder doctrine
> because the intent to kill is presumed if the state proves intent
> to commit the underlying, predicate felony).

>                                             . . .

In the instant case, the theory of appellant's participation in the crime is one of complicity, whereby he aided or abetted the principal, *i.e.*, Greenberg, in the commission of the felony offenses of aggravated robbery, aggravated burglary, and/or felonious assault. In the process of committing those offenses, the principal committed a murder. Appellant argues that because he was an aider and abettor, rather than the principal offender, the only way the jury could find him guilty was by inference stacking, which is prohibited.

The complicity statute, R.C. 2923.03, states, in relevant part, as follows:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense;

* * *

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

Here, appellant argues the jury had to make the following two inferences in order to convict him of felony murder: (1) that the principal offender intended to commit the crime of aggravated burglary, aggravated robbery, or felonious assault, and that appellant was an accomplice to the offense(s), and (2) that appellant's participation in the commission of the predicate felony was the proximate cause of Daniels' death, despite the lack of a specific intent to kill. . . .

[T]he *mens rea* element for felony murder under R.C. 2903.02(B) is satisfied when the state proves the intent required for the underlying felony. *Walters* at ¶ 61. However, this does not mean the statutory provision for felony murder is unconstitutional. "[T]he General Assembly has chosen to define felony murder in this manner, and the General Assembly is presumed to know the consequences of its legislation." *State v. Miller*, 96 Ohio St.3d 384, 2002–Ohio–4931, ¶ 34.

18

***

[W]hether a conviction is based upon inference stacking goes to the sufficiency of the evidence, not the constitutionality of the statute under which the defendant has been charged. See *State v. Pilgrim*, 184 Ohio App.3d 675, 2009–Ohio–5357 (10th Dist.), ¶ 25. Moreover, we do not find impermissible inference stacking here.

The rule prohibiting the stacking of one inference upon another prohibits "the drawing of one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences drawn from other facts." *Donaldson v. N. Trading Co*., 82 Ohio App.3d 476, 481 (10th Dist .1992), citing *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus. However, it does not prohibit using parallel inferences with additional facts. *Id*. at paragraph two of the syllabus. In addition, it does not prohibit the drawing of multiple, separate inferences from the same set of facts. *McDougall v. Glenn Cartage Co*., 169 Ohio St. 522 (1959), paragraph two of the syllabus. The rule against stacking inferences is limited to inferences drawn exclusively from other inferences. *Donaldson* at 481.

Next, we look at intent as it relates to the underlying offense. Intent cannot be proven by the direct testimony of a third person; rather, it can be inferred from the surrounding facts and circumstances of the crime. *State v. Galloway*, 10th Dist. No. 03AP–407,2004–Ohio–557, ¶ 22–23. *See also State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. An offender's purpose and intent can be proven solely through circumstantial evidence. *Galloway* at ¶ 23. Here, there is evidence showing the intent of both the principal (Greenberg) and the accomplice (appellant).

According to his own testimony, Greenberg was part of the plan to go inside the duplex in order to steal money and drugs. He entered the residence armed with a handgun. According to the testimony of others, appellant was also one of the "inside" guys and was part of the plan. He approached the residence with a club or a stick. Although he did not get inside the residence, he played a key role in facilitating Greenberg's flight from the residence and the scene following Greenberg's

19

actions, which included forced entry, the shooting and killing of one of the occupants, and the wounding of another, and the theft of money and drugs. As previously stated, multiple inferences can be drawn separately from the same set of facts, *McDougall* at paragraph two of the syllabus, and intent may be inferred based upon the circumstances surrounding the crime. *Johnson* at the syllabus.

In addition, we do not find the "causing the death of another as a proximate result" element to be based upon impermissible inference stacking. " '[I]t is irrelevant whether the killer was the defendant, an accomplice, or some third party. * * * A defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of [the] defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.' " *Ford* at ¶ 31, *quoting State v. Dixon,* 2d Dist. No. 18582 (2002).

In committing an aggravated burglary and/or aggravated robbery armed with a weapon, and when the occupants of the residence are known to be present, it is a direct, natural, and reasonably foreseeable consequence that such actions would result in the death of another. *See generally State v. Jennings*, 10th Dist. No. 09AP–70, 2009–Ohio–6840, ¶ 51 (the felony murder statute contemplates a proximate cause theory, whereby the death was a reasonably foreseeable consequence of the two defendants' aggravated robbery offense, regardless of which of the two pulled the trigger). *See also State v. Weber,* 2d Dist. No. 22167, 2008–Ohio–4025, ¶ 22 (the defendant's involvement with an accomplice in an armed robbery caused a chain of events in which one of the reasonably foreseeable consequences was the death of the accomplice; the defendant's involvement in the robbery was a proximate cause of the death of another).

To prove complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the prosecution must show "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." Johnson at the syllabus; see also *State v. Jackson*, 10th Dist. No. 03AP–273, 2003–Ohio–5946, ¶ 32; *State v. Chatman*,

10th Dist. No. 08AP–803, 2009–Ohio–2504, ¶ 26. Aiding and abetting may also be established through overt acts of assistance. *State v. Trocodaro*, 36 Ohio App.2d 1, 6 (10th Dist.1973). However, " 'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *State v. McWhorter*, 10th Dist. No. 08AP–263, 2008–Ohio–6225, ¶ 18, *quoting State v. Widner*, 69 Ohio St.2d 267, 269 (1982). Aiding and abetting requires the accused to have taken some role in causing the offense. *McWhorter* at ¶ 18, *citing State v. Sims*, 10 Ohio App.3d 56, 59 (8th Dist.1983).

Contrary to appellant's claims, the evidence is sufficient to demonstrate more than appellant's mere presence at the scene. In fact, the evidence is sufficient to demonstrate appellant aided and abetted in the underlying offense by: (1) participating in the planning of the robbery; (2) approaching the duplex with Greenberg and James; (3) carrying a club or a stick; and (4) assisting Greenberg in fleeing from the scene.

In conclusion, we find appellant has failed to show. . . that impermissible inference stacking occurred, or that the evidence was insufficient to find appellant guilty under the felony-murder statute.

*State v. Maynard,* 2012 WL 2463966, at *3-7.

In *Jackson v. Virginia* 443 U.S. 307 (1979) ], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing

the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in

determining witnesses' credibility and weighing the evidence, a federal court must grant habeas

corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could

have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

[T]here is a "double layer" of deference due to state court determinations about the

sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009),

deference is due to the jury's finding of guilt because the substantive standard, announced in

*Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." In addition, even if a *de novo* review of the evidence leads

to the conclusion that no rational trier of fact could have so found, a federal habeas court "must

still defer to the state appellate court's sufficiency determination as long as it is not

unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial

hurdle for a habeas corpus petitioner to overcome and, for the reasons discussed by the state

appellate court. Petitioner has done so here.

**Claim Two**

In claim two, Petitioner asserts that he was denied a fair trial by  prosecutorial

misconduct, because the prosecutor expressed his/her personal opinion of the credibility of a

prosecution witness and improperly referred to facts not in evidence during closing argument.

The state appellate court rejected this argument as follows:

> In reviewing allegations of prosecutorial misconduct, the test is
> whether the conduct is improper and whether the conduct
> prejudicially affected the substantial rights of the accused. *Pilgrim*
> at ¶ 57; *State v. Guade*, 10th Dist. No. 11AP–718, 2012–Ohio–
> 1423, ¶ 20, *citing State v. White*, 82 Ohio St.3d 16, 22 (1998). "

'[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP–1127, 2002–Ohio–5416, ¶ 38, quoting Smith v. Phillips, 455 U.S. 209, 219 (1982). Therefore, prosecutorial misconduct will not be grounds for reversal unless the accused has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). Prosecutors are afforded wide latitude in closing arguments, which must be reviewed in their entirety in order to determine the impact of the allegedly improper remarks. *State v. Treesh*, 90 Ohio St.3d 460, 466 (2001); *State v. Hill*, 75 Ohio St.3d 195, 204 (1996). If the accused or his counsel failed to object to the comment, he has forfeited all but plain error. *State v. Williams*, 79 Ohio St.3d 1, 12 (1997). Reversal for prosecutorial misconduct is warranted under the plain error standard if it is clear that the accused would not have been convicted without the improper conduct. *State v. Saleh*, 10th Dist. No. 07AP–431, 2009–Ohio–1542, ¶ 68.

Appellant argues it is the cumulative effect of the prosecutor's line of questioning, rather than particular individual comments, which constitute the purported misconduct. Appellant submits the prosecutor repeatedly asked numerous witnesses whether they were being truthful and made personal assessments as to the witnesses' credibility. Appellant argues this line of questioning, coupled with the State's improper closing argument, meant the jurors did not have the opportunity to assess the credibility of the witnesses for themselves because the State repeatedly told the jurors that the witnesses were credible.

Specifically, appellant argues the prosecutor improperly vouched for the credibility of the co-defendant witnesses—Greenberg, Nichols, and Danko—by asking them during direct examination whether they were telling the truth. Improper vouching occurs where an attorney expresses his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *Williams* at 12; *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). Here, like in Williams, the evidence does not establish that the prosecutor was "vouching" for the witnesses, but rather that he was exploring the basis of the plea agreements, which included a requirement that the co-defendants Greenberg, Nichols, and Danko testify truthfully against any other co-defendants. The prosecution is not prohibited from establishing that a co-defendant/witness entered into a plea agreement which includes an agreement to tell the truth. *State v. Jackson*, 92 Ohio St.3d 436, 449 (2001). Contrary to appellant's assertions, the record here does not demonstrate that the prosecutor expressed a personal belief about the reliability of the witnesses'

23

testimony. *See State v. D'Ambrosio*, 67 Ohio St.3d 185, 192 (1993) (court declined to interpret the prosecutor's question of: "Is what you told the Court here the truth?" as implied vouching).

Furthermore, of those questions pointed out by appellant which were directed at truthfulness, only the objections to two of them were overruled. All other objections by counsel were sustained. Therefore, we cannot say that these questions, even if we presumed them to be improper for the sake of argument, affected the fairness of the trial or caused prejudice to appellant.

With respect to the prosecution's closing arguments, we do not find that the prosecution argued his own personal beliefs as to the credibility of the witnesses' testimony. The prosecutor did not express a personal opinion about the credibility of Greenberg, Nichols, or Danko; rather, the prosecutor acted properly in arguing that the evidence and the testimony of all of the witnesses, taken together, supported the conclusion that the witnesses were believable as to the testimony they provided at trial. *See State v. Thompson*, 10th Dist. No. 10AP–593, 2011–Ohio–6725, ¶ 38 (counsel are entitled to a wide degree of latitude during closing arguments; the prosecution may submit reasonable inferences based upon the evidence presented at trial and also comment on those inferences).

Finally, appellant argues the prosecution committed misconduct by arguing facts not in evidence during its rebuttal closing. In response to appellant's argument that the State's case was flawed because it had failed to introduce the testimony of any police detectives, the prosecutor commented that the detectives had been available and were just outside the courtroom if their testimony became necessary, but the State had not found their testimony to be either relevant or necessary. Counsel for appellant objected to the State's comments as personal comments on facts which were not in evidence. Because appellant's objection to those comments was sustained, we find appellant's argument to be without merit, as there was no prejudice to appellant. *See State v. Noling*, 98 Ohio St.3d 44, 2002–Ohio–7044, ¶ 94 (in reviewing the prosecutor's argument in its entirety, and even in construing a particular remark as misconduct, it lacked a prejudicial effect and did not warrant reversal because the court sustained the objection).

Accordingly, we overrule appellant's third assignment of error.

*State v. Maynard*, 2012 WL 2463966, at *9-11.

24

In considering a claim of prosecutorial misconduct, the Court first determines whether the prosecutor's conduct and remarks were improper, and if so, considers whether the impropriety was so flagrant as to warrant reversal. *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008)(citations omitted). In making this determination, the Court weighs the following four factors:

> whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Id*. (citations omitted). A reviewing court must consider the challenged remarks within the context of the entire trial. *Id*. at 901. )). [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden,* 477 U.S. 168, 181 ((citation omitted). "Habeas relief is only proper where prosecutorial misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Braun v. Morgan*, No. 1:11-cv-00886, 2014 WL 814918, at *30 (N.D. Ohio Feb. 25, 2014)(quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The record fails to reflect that the state appellate court's decision denying Petitioner's claim justifies federal habeas corpus relief, particularly under the deferential standard of review of the AEDPA. To the extent that the prosecutor's comments may have been deemed to be improper (See ECF 6-1, PageID# 813-839 for reference to the specific comments complained of), they were of an isolated nature and not so prejudicial as to render the proceedings to be fundamentally unfair, particularly in view of strong evidence of guilt.

25

**Recommended Disposition**

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1) (B); Rule 72(b), Fed.R.Civ.P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
United States Magistrate Judge